IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

IN RE: PREMIER ENTERTAINMENT BILOXI
LLC (d/b/a HARD ROCK HOTEL & CASINO
BILOXI) and PREMIER FINANCE BILOXI CORP.                    DEBTORS
                                                BANKRUPTCY CASE NO. 06-50975 ERG

| | | |
|---|---|---|
| PACIFIC INVESTMENT | § | |
| MANAGEMENT COMPANY LLC, et al. | § | APPELLANTS |
| | § | |
| v. | § | CAUSE NO. 1:07CV1058-LG-RHW |
| | § | |
| PREMIER ENTERTAINMENT | § | |
| BILOXI LLC, et al. | § | APPELLEES |

consolidated with

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION | § | APPELLANT |
| | § | |
| v. | § | CAUSE NO. 1:07CV1222-LG-RHW |
| | § | |
| PREMIER ENTERTAINMENT | § | |
| BILOXI LLC, et al. | § | APPELLEES |

MEMORANDUM OPINION AND ORDER
GRANTING APPELLEES' MOTION TO DISMISS

**BEFORE THIS COURT** are the consolidated appeals of the Bankruptcy Court's Order to confirm the chapter 11 reorganization plan of Premier Entertainment Biloxi LLC and Premier Finance Biloxi Corporation ("Premier"). Premier has filed a Motion to Dismiss the appeal [3]. Upon reviewing the submissions of the parties and the relevant legal authority, the Court finds that the Motion to Dismiss the appeal is well taken and that under the doctrine of equitable mootness these consolidated appeals should be dismissed.

FACTS

Pacific Investment Management Company LLC, Deutsche Asset Management, Western

Asset Management, and Castlerigg Master Investments Ltd.("Noteholders"), are the holders of notes that were issued by Premier in order to fund the design, construction, and opening of the Hard Rock Hotel & Casino in Biloxi, Mississippi. These high yield notes accrued interest at a fixed rate of 10.75% for eight years and reached maturity on February 1, 2012. The Noteholders claim that certain protections were given to them in the Indenture that governed the notes as a result of the high risk nature of the notes. For example, the Indenture prohibited prepayment of the notes before February 1, 2008, and required a prepayment penalty in the amount of $8,600,000 for prepayment on February 1, 2008. The Indenture also provided that the Debtors could discharge their obligation under the Indenture beginning on February 1, 2007, by "defeasing" the notes, i.e. paying and discharging the entire indebtedness on the notes and accrued interest to the date of maturity or redemption.

Only days before its scheduled opening, the Hard Rock Hotel & Casino was severely damaged by Hurricane Katrina. After the hurricane, the Noteholders and Premier could not agree on the amount of insurance coverage that should be obtained on the damaged structure or who should control insurance proceeds that were paid as a result of the hurricane damage to the structure.

On September 19, 2006, Premier filed chapter 11 bankruptcy petitions. On July 30, 2007, over the objections of the Noteholders and the Indenture Trustee, the Bankruptcy Court confirmed Premier's Joint Plan of Reorganization. The Reorganization Plan provides a 100% recovery for creditors with allowed claims. It also provides that the Noteholders will receive the principal plus the accrued unpaid interest through the effective date of the plan. The Noteholders claimed that they were also entitled to a prepayment penalty. As a result, the Reorganization Plan provides that

funds representing the amount of the prepayment penalty will be held in escrow until the Bankruptcy Court determines whether the Noteholders are entitled to the prepayment penalty. Aggrieved by the Bankruptcy Court's confirmation of the Reorganization Plan, the Noteholders and the Indenture Trustee filed separate notices of appeal.[1]  According to the Noteholders and the

---

[1]The Noteholders have asserted the following issues on appeal:
1.  Did the Bankruptcy Court err in confirming the Plan where, among other things, the Plan permits the Debtors to make payments on the subordinated Rank Note held by the Debtors' controlling equity holder and contains certain exculpation provisions in violation of: (a) a subordination agreement prohibiting such payments ahead of full payment and satisfaction of the Noteholders' senior secured Notes; and (b) applicable law governing exculpatory provisions?
2.  Did the Bankruptcy Court err in confirming a Plan for Premier Finance where, among other things, the Debtors manipulated the classification and treatment of certain claims (including "artificial impairment") and gerrymandering of the voting process) and otherwise acted in bad faith?
3.  Did the Bankruptcy Court err in confirming a Plan for Premier Entertainment Biloxi where, among other things, the Debtors manipulated the classification and treatment of certain claims (including by "artificial impairment"and gerrymandering of the voting process) and otherwise acted in bad faith?
4.  Did the Bankruptcy Court err in concluding that the following constitutes impairment under section 1129(a)(10) of the Bankruptcy Code:
   (a) Payment to unsecured creditors of 100% of principal and pre-petition interest, plus post-petition interest at the legal rate prescribed under 11 U.S.C. §726;
   (b) Payment of 50% of general unsecured claims up to 60 days after the effective date of the Plan; and
   (c) Payment of a slightly reduced interest rate and early prepayment of a loan to Peoples Bank, when the loan agreement permitted early prepayment?
5.  Did the Bankruptcy Court err in allowing amendment, reclassification and voting of the Peoples Bank claim against Premier Finance during the confirmation hearing ...?
6.  Did the Bankruptcy Court err in finding that the plan was "fair and equitable"...?
7.  Did the Bankruptcy Court err in refusing to enforce provisions of the Indenture...?

(Bondholders' Amended Statement of Issues on Appeal).  The Issues on Appeal asserted by the Indenture Trustee are:

Indenture Trustee, the Bankruptcy Court should not have confirmed a Reorganization Plan that requires them to separately litigate whether they are entitled to the prepayment penalty. The appeals were consolidated by the agreement of the parties, and the parties agreed that appellate briefs would not be filed until the Court ruled upon the Debtors' Motion to Dismiss.

**DISCUSSION**

In support of its Motion to Dismiss the consolidated appeals, Premier has invoked the doctrine of equitable mootness. Generally, an appeal is moot only if events have occurred during the pendency of the appeal that make it "impossible for the court to grant 'any effective relief whatsoever.'" *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992)(*quoting Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). Thus, Article III mootness is rooted in the Constitutional requirement that a court must dismiss as moot cases that present no case or controversy. *Id.* However, in bankruptcy cases the mootness doctrine has been expanded. Under the doctrine of equitable mootness a bankruptcy

---

1. Whether the Bankruptcy Court erred in determining that Section 1129(b) of the Bankruptcy Code permits solvent Debtors to "cram down" confirmation of a Chapter 11 Plan of Reorganization over the objection of a class of dissenting Noteholders to prepay the indebtedness evidenced by the Notes in violation and breach of the Indenture enforceable under applicable State law.
2. Whether a Chapter 11 Plan of Reorganization of solvent Debtors that prepays notes in violation of their terms, giving rise to damages is rendered "fair and equitable" within the meaning of 11 U.S.C. §1129 by creation of an escrow fund for payment of said claims.
3. Whether the Bankruptcy Court erred by bifurcating the issue of plan confirmation from the resolution of Noteholders' rights in respect of the wrongful pre-payment of Notes as provided for in the Chapter 11 Plan of Reorganization.
4. Whether the Bankruptcy Court erred in determining that the requirements for plan confirmation of 11 U.S.C. §1129(a)(10) had been satisfied with respect to Debtors' Chapter 11 Plan of Reorganization.

(Trustee's Statement of Issues on Appeal).

appeal will be dismissed as moot even though effective relief could conceivably be fashioned. Equitable mootness "is a recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganizations actions" and is intended to protect the interests of third parties who are not before the reviewing court who have relied upon the plan as implemented. *Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034, 1038-39 (5th Cir. 1994).

> Many courts, including our own, . . . have employed the concept of "mootness" to address equitable concerns unique to bankruptcy proceedings. In this context, "mootness" is not an Article III inquiry as to whether a live controversy is presented; rather it is a recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions . . . . Consequently, a reviewing court may decline to consider the merits of a confirmation order when there has been substantial consummation of the plan such that effective judicial relief is no longer available - even though there may still be a viable dispute between the parties on appeal.

*Id.* The following three factors must be examined when determining whether an appeal is moot:

(1) whether a stay has been obtained;

(2) whether the plan has been "substantially consummated;" and

(3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan. *Id.* at 1039.

OBTAINING A STAY

In this case, the Appellants sought an emergency stay in both the Bankruptcy Court and the District Court, but both Motions were denied. In *Manges*, the Court held that the failure to request a stay and the inability to obtain a stay by motion are treated no differently under the mootness doctrine. *Id.* at 1040. Therefore, despite the Appellants' diligence in seeking a stay, the inability to obtain a stay weighs in favor of a finding equitable mootness. *See id.* at 1040.

ACTING PRIOR TO SUBSTANTIAL CONSUMMATION

"Substantial consummation" is considered by some courts to be the "foremost consideration" particularly "where the reorganization involves intricate transactions." *See In re Continental Airlines,* 91 F.3d 553, 560 (3rd Cir. 1996). It is defined as: (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan. *See* 11 U.S.C. § 1101(2). The Fifth Circuit, "in addressing the mootness issue, has borrowed the 'substantial consummation' yardstick because it informs our judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *Manges*, 29 F.3d at 1041. The parties do not dispute that the Plan has been substantially consummated. In fact, Premier asserts that the Plan has been fully consummated. The only remaining dispute concerns the adjudication of the prepayment penalty issue. Therefore, this factor also weighs in favor of a finding of equitable mootness.

THE EFFECT UPON THIRD PARTIES AND THE SUCCESS OF THE PLAN

The final factor is whether the relief requested would affect either the rights of parties not before the court or the success of the plan. *Id.* at 1039. Appellants assert that the relief that they request would not affect either the rights of parties not before the court or the success of the plan because they only seek to be paid outright the funds that are currently held in escrow.[2] However,

---

[2] The Appellants also assert that the equitable mootness doctrine should not be applied in this case because the Debtors are solvent. However, there is no Fifth Circuit case law supporting the creation of a solvency exception to the doctrine.

the statements of issues on appeal framed by the Appellants are not so limited. The Appellants repeatedly assert that the Bankruptcy Court erred in confirming the Plan, and as a result, they ask this Court to overturn the confirmation of the entire Plan. The overturning of the Plan would create an unmanageable situation for the Bankruptcy Court. In addition it would affect the success of the Plan and harm the exit lenders who relied on the Plan when they agreed to lend funds to Premier. Moreover, the Bankruptcy Code provides that a plan cannot be modified or amended after substantial consummation has taken place. 11 U.S.C. § 1127(b) (*cited in Manges*, 29 F.3d at 1043 n.13).

In the opinion of the Court, the Premier Reorganization Plan has passed the point at which fundamental changes can be made. Equitable considerations of finality and good faith reliance on a substantially consummated plan outweigh the Appellants' interests in appealing the confirmation of the Plan. Therefore, the Debtors' Motion to Dismiss must be granted.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss [3] filed by Debtors/ Appellees Premier Entertainment Biloxi LLC and Premier Finance Biloxi Corp. is **GRANTED**. This appeal is hereby **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 19th day of March, 2008.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE